IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEONNE R. NEW-HOWARD, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ERIK SHINSEKI, SECRETARY of the | : | |
| DEPARTMENT OF VETERANS AFFAIRS. | : | No. 09-5350 |

MEMORANDUM

AND NOW, this 21st day of June 2012, upon consideration of Defendant's Motion for

Summary Judgment (Doc. No. 56), Plaintiff's Response Thereto (Doc. No. 72), Defendant's

Reply Brief (Doc. No. 79), Plaintiff's Response in Opposition to Defendant's Reply (Doc. No.

84), Defendant's Statement/Supplemental Brief Regarding Plaintiff's Age and Disability

Discrimination Claims (Doc. No. 91), Plaintiff's Motion for Summary Judgment (Doc. No. 97),

and Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment (Doc.

No. 98), it is hereby ORDERED as follows.  It is hereby ORDERED that Defendant's motion is

GRANTED IN PART and DENIED IN PART.  Plaintiff's Cross-Motion for Summary Judgment

(Doc. No. 97) is DENIED.

Consistent with the text of the Order that follows, the matter is REMANDED to the

MSPB solely for the limited purpose of making findings regarding the denial of Plaintiff's

requests for sick leave.

The Clerk of Court is directed to close this case for statistical purposes.

I.      Factual Background

        A.      Prior History

1

Plaintiff Deonne New-Howard is a veteran of the federal court system.  The story of her history as an employee of the Department of Veteran's Affairs ("VA") is told through the opinions of various judges over the course of nearly 24 years of civil litigation.

Plaintiff began as a GS-3 secretary in the Department of Veteran's Affairs, when she suffered a work-related back injury in 1984.  As a result of this injury, Plaintiff received Office of Worker's Compensation ("OWCP") benefits for a period of time extending from mid-1984 to mid-1985.  See New v. Principi, No. 99-3782, 2003 WL 22331748, at *1 (E.D. Pa. Oct. 8, 2003). Although New-Howard returned to work on June 4, 1985, she was absent from work following her return for a period of approximately three weeks, after which she was removed on charges that she was absent without leave ("AWOL").  Upon review of the agency decision, her removal was reduced to a reprimand.  Plaintiff subsequently returned to work in May 1986, but she was ultimately removed on January 24, 1987 for absences during the previous eight months.  Her removal ultimately resulted in a settlement, pursuant to which she was reinstated.  Id.

After Plaintiff returned to work, she suffered an aggravation of her injury, and requested a parking space closer to the entrance.  When Defendant failed to act upon the request, Plaintiff ceased to appear beginning on July 29, 1987.  Id.  Defendant eventually made certain accommodations, not the subject of the instant litigation, and ordered New-Howard to return to work.  Plaintiff refused to return to work and instituted an action with the Office of Workers Compensation ("OWCP") for benefits.  Id. at *2.  The VA ultimately terminated Plaintiff without a ruling from the OWCP in February 1988, based upon her unauthorized absences.  Id.  The Merit Systems Protection Board ("MSPB") upheld her removal, and New-Howard thereafter instituted litigation in district court, based upon claims for handicap discrimination, breach of

contract, intentional infliction of emotional distress, and negligence.  Id.

In the interim, the OWCP ruled against New-Howard on her claim, and New-Howard wrote to the VA requesting reinstatement and restoration rights, which Defendant denied.  Id. Plaintiff appealed this decision to the MSPB.  The MSPB affirmed the decision of the agency, and the full board affirmed the MSPB decision.  Id.  In 1992, in response to this decision, Plaintiff filed another complaint in district court seeking review of the MSPB decision, and asserting new claims of discrimination, denial of due process, and retaliation.  Plaintiff ultimately lost her claims of discrimination, and New Howard appealed this decision.  Id.

At the same time, Plaintiff appealed the determination of the OWCP.  While Plaintiff's challenge was pending before the Court of Appeals, the OWCP vacated its earlier decision and held that New-Howard was entitled to compensation for the period extending from October 15, 1987 to October 2, 1990.  Id. at *3.  The Court of Appeals thus vacated the district court decision and directed the district court judge to remand the case to the MSPB to reconsider its denial of restoration rights.  Id.

The MSPB subsequently reopened its decision in 1996 and upheld the VA's denial of restoration rights, despite New-Howard's argument that her denial of restoration rights was improper, given that her removal was the result of her compensable injury.  Id.  Plaintiff appealed this decision in district court on January 7, 1997, asserting a claim for due process violations, along with claims for sex discrimination, handicap discrimination, and retaliation.  These claims were dismissed by the presiding judge.  Id. at *4.

Plaintiff appealed the decision again to the Court of Appeals for the Federal Circuit, where she ultimately prevailed on her claim that VA had erred in denying her restoration

3

benefits.  Id.  In particular, the Court held that her removal was related to her compensable injury. However, given that the MSPB had not ruled on whether the VA's alternative ground for her removal was related to her compensable injury, the Court remanded the case to the MSPB to make such a determination.  On June 24, 1999, the MSPB determined that her removal for poor attendance was a valid cause for removal unrelated to her compensable injury.  Id.

In July 1999, Plaintiff appealed this decision to the district court for the Eastern District of Pennsylvania.  In 2003, Judge Dalzell found the decision of the MSPB arbitrary and capricious, remanding the action to the MSPB to reconsider its decision.  Id. at *9.  Ultimately, on July 11, 2005, the MSPB found that (1) the poor overall attendance charge was not a valid removal for cause unrelated to Plaintiff's compensable injury and (2) Plaintiff was entitled to priority consideration for restoration retroactive to February 15, 1991.  (Def.'s Ex. A at MSPB000642-62.)

B.      Current Litigation

Pursuant to the MSPB's July 11, 2005 Order, on July 29, 2005, Department of Veterans Affairs Director of Information Technology Carol Waldt wrote New-Howard a letter instructing New-Howard to report to duty to Terris Farmer, Acting Assistant Chief of the Technical Support Division, at 8:00 a.m. on Monday, August 15, 2005.  (See Def.'s Ex. A at MSPB000344.)  On August 15, 2005, Plaintiff was restored to federal employment and reported to work.  On her first day of work, after nearly 18 years of litigation pursuing reinstatement, Plaintiff requested leave for August 16, 2005 in order to take her husband to a medical appointment.

According to the testimony before the MSPB, Farmer told Plaintiff that she would need to complete a request in writing, and provided Plaintiff with a slip to make the request.  Defendant

contends that Plaintiff's leave balance had not yet been calculated, and Plaintiff was told to take leave without pay until that calculation was completed, at which juncture New-Howard would be credited with retroactive leave.  Plaintiff requested leave without pay and did not appear the next day.  On August 17, 2005, when Plaintiff returned to work, New-Howard against requested ongoing medical leave in order to take her husband to medical appointments.  In addition, Plaintiff notified Farmer that she would leave early to take her husband to an appointment, and handed Farmer her husband's medical discharge papers.[1]  Farmer notified Plaintiff that she would be required to fill out a leave slip, supporting paperwork, and specify the dates that she would need to be absent.  Defendant contends that Farmer then informed Plaintiff that she needed to attend a meeting, but New-Howard could interrupt the meeting to speak with her. According to the defendant, while Farmer was engaged in the meeting, New-Howard informed John Carr, Chief of Management Staff, that Farmer had approved her request for leave and left without again speaking to Farmer.  New-Howard left the unapproved leave request slip in her cubicle, which requested leave for the period from August 17, 2005 to August 30, 2005.  (See Def.'s Ex. C at DHN00089.)  Plaintiff also left a type-written but unprinted and unsent letter to the VA on her computer, justifying her request for leave.  (Id. at DHN00360.)

August 17, 2005 was the last day that Plaintiff reported to work.  What ensued in the days that followed was a series of communications between Plaintiff and the VA that lasted until July 9, 2006, when Plaintiff was eventually removed from federal employment.

On August 30, 2005, Farmer contacted New-Howard via letter to inform her that her

---

[1] Plaintiff's husband, Edgar Howard, had been discharged from Albert Einstein Medical Center on July 29, 2005 after surgery for the removal of a toe.

5

leave had not been approved and she had been declared AWOL for the period extending from August 17, 2005 through August 30, 2005.  (See Def's Ex. A at MSPB000486-87.)  Farmer informed Plaintiff that the documentation that she had submitted to support her leave request was insufficient.  On August 31, 2005, Plaintiff contacted the VA through her then-lawyer, Lucretia Clemons, explaining that Plaintiff had left a request for leave on the hard-drive of her office computer, and further requesting FMLA leave for Plaintiff for the period extending from August 17 through September 27, 2007, thus extending the initial request for an additional 27 days.  In support of the request, Clemons submitted only a "Certificate to Return to Work and/or School," signed by Jihan Hegazy, Edgar Howard's physician, which noted that he could not stand until September 27, 2005.  (See Def.'s Ex. A at MSPB000350-51.)

On September 2, 2005, Thomas Graham responded, notifying New-Howard that her request was denied because the information submitted was not supported by adequate documentation.  Graham detailed the appropriate documentation to be submitted and enclosed it in his correspondence, which included a WH-380 form.  (See Def.'s Ex. A at MSPB000468-81.) On September 15, 2005, Clemons sent Carr, Graham, and Farmer an application for FMLA leave, which included a partially completed WH-380 form.  The doctor completing the form marked N/A to a substantial portion of the questions enclosed.  In Clemons' correspondence, she also requested an additional six months of annual leave for New-Howard, for the period extending from September 28, 2005 to March 28, 2006.  (See Def.'s Ex. A at MSPB000352-57.)

On September 27, 2005, Waldt sent a letter to New-Howard in which she explained her reasons for denying Plaintiff's requests, noting that the documentation remained insufficient. She cited staffing needs as the reason for denying the six months of accrued leave.  (See Def.'s

Ex. A at MSPB000450-51.)  Waldt advised Plaintiff to seek FFLA leave for a portion of the time

for which she requested leave.

In the interim, Plaintiff's husband returned to work on October 4, 2005.  (New-Howard

Dep. 151:7, May 27, 2011.)  New-Howard then began submitting requests for leave on her own

behalf based upon her own mental health condition.  In particular, Plaintiff submitted a request

for leave from October 5, 2005 through an undetermined date, submitting a form completed by a

clinical psychologist, Melvin Rogers, Ph. D., who claimed that he was treating Plaintiff for

anxiety.  On October 28, 2005, Waldt reiterated the various decisions explained above regarding

Ms. New-Howard's requests for leave.  (See Def.'s Ex. A at MSPB000405-07.)  In addition,

Waldt deemed the information submitted by Rogers insufficient, and provided a medical

questionnaire and WH-380 to be completed by Rogers.  (Id.)  The completed forms were

received by the union representative for the VA on December 16, 2005.  (See Def.'s Ex. A at

MSPB000956.)  New-Howard was granted FMLA leave from December 16, 2005 through

January 15, 2006.  (See Def.'s Ex. A at MSPB000956.)  On January 17, 2006, New-Howard

contacted Farmer via letter, stating that she required more leave time.  (See Def's Ex. A at

MSPB000384.)  In addition, on the same date, Rogers sent in a letter certifying that New-Howard

remained under his care for "intense emotional reactions and stress." (Def.'s Ex. A at

MSPB00385.)

On February 3, 2005, Waldt rejected the request to extend FMLA leave, explaining that

the documentation submitted was administratively unacceptable to approve the request.  (Def.'s

Ex. A at MSPB000375.)  In this communication, Winter enclosed another medical questionnaire

and emphasized that Rogers was to answer every question included in the document, and she

advised that the completed form was to be returned by February 16, 2005.  (Id.)  No

questionnaire was returned, and on February 27, 2006, New-Howard was sent a notice of

proposed removal.  (Def.'s Ex. A at MSPB000372-73.)  Plaintiff has produced paperwork dated

February 28, 2006, supporting her request for leave, but no presents evidence of its transmission

to the VA.  (Doc. No. 72 at 32-36.)  Again, on March 14, 2006, New-Howard renewed her

request to use "use or lose" leave.  (See Doc. No. 50, New's Renewed Formal Leave Request.)

On April 3, 2006, Farmer sent New-Howard a letter in which she (1) noted Plaintiff's March 14,

2006 fax and asked that she send a page that was missing from the fax, and (2) instructed

Plaintiff to provide more documentation regarding her FMLA request of January 17, 2006, if she

wished to use FMLA leave.  (See Doc. No. 55, Letter dated April 03, 2006.)  The record reveals

no response to this letter.

Following New-Howard's contact with the VA's Office of Resolution Management, on

June 30, 2006, New-Howard was notified that she would be removed effective July 9, 2006.  As

described by the letter, New-Howard was removed on that date.  The basis for Plaintiff's removal

was excessive and continuous absence from work from the period extending from August 17,

2005 through June 30, 2006.  In addition, the letter noted that New-Howard had failed to follow

proper leave procedures.  The letter noted that while some of the absences within the relevant

time period were permissible because leave had been appropriately obtained, the letter noted that

the bulk of the absences were unapproved.  (See Def.'s Ex. C at DNH00429-30.)

Subsequent to her removal, Plaintiff pursued an action before the MSPB challenging her

removal on the grounds that it was the result of discrimination and retaliation, and that she had

been improperly denied leave.  In his initial decision, Judge Rudsill affirmed the Final Agency

8

Decision regarding Plaintiff's removal, and the full board affirmed the initial decision.

Plaintiff subsequently instituted the present action, pursuing claims for breach of implied contract and violations of the Privacy Act, the Federal Tort Claims Act, Title II of the Civil Rights Act, and Plaintiff's Fifth Amendment rights, and seeking review of the MSPB's decision regarding removal and discrimination.  Defendant has moved for summary judgment regarding Plaintiff's claims pursuant to the Privacy Act, Bivens, and Plaintiff's petition for review of the decision of the MSPB.  Plaintiff has also filed a cross-motion for summary judgment, the substance of which addresses Defendant's motion for summary judgment regarding her Title VII claims.  We address each claim in turn.

II.     Legal Standard

A court may grant summary judgment where the moving party shows that "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In order to prevail on a motion for summary judgment, the moving party need not produce evidence to disprove the opponent's claim, but must demonstrate the absence of any genuine factual disputes.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party makes such a showing, the nonmovant may not rely on his pleadings alone, but must produce evidence that demonstrates a genuine issue of fact for trial.  Fed. R. Civ. P. 56 (c) & (e).

A summary judgment motion does not invite the Court to "weigh the evidence or make credibility determinations; these tasks are left to the fact-finder."  Boyle v. City of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).  Attacking the credibility of the movant's evidence cannot overcome summary judgment, and the non-movant must produce affirmative evidence raising a genuine factual dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

A nonmoving party must "adduce more than a mere scintilla of evidence in its favor," and cannot "simply reassert factually unsupported allegations contained in its pleadings" in order to survive summary judgment.  Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).  If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment must be granted in favor of the movant.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

III.    Privacy Act Claims

The substance of Plaintiff's first claim deals with allegations that Plaintiff's personnel records contain records that are incorrect within the meaning of the Privacy Act, 5 U.S.C. § 552a. In particular, Plaintiff alleges that her personnel records must be amended to (1) accurately reflect her accrued leave, (2) remove personnel records indicating that Plaintiff was removed for cause on January 11, 1988, (3) reflect that she was an employee of the VA from 1988 to 2005, (5) reflect that she was still entitled to benefits under the civil service retirement system through July 9, 2006, and (6) maintain accurate EEO investigative files that contain records of medical certifications provided by Plaintiff to the VA to support her leave requests.

The terms of the Privacy Act require each agency to  "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  5 U.S.C. § 552a(e)(5).  Whenever an agency makes a determination not to amend an individual's record, the individual may bring a civil action against the agency, over which a federal district court has jurisdiction.  See 5 U.S.C. § 552a(g)(1).  Pursuant to

552a(g)(3)(A), the court may enjoin the agency from withholding the records and order

production of any records improperly withheld form him.  An action for injunctive relief is

reviewed de novo.  In addition, a plaintiff may pursue collect monetary damages in instances in

which the court determines that an agency has acted in an "intentional or willful" manner.  See 5

U.S.C. § 552a(g)(4).

Accordingly, in her complaint, Plaintiff requests that her records be amended, that she be

awarded damages, and that the defendant be enjoined from further use of the allegedly altered

documents.  In its motion for summary judgment, Defendant makes several claims regarding

these requests.

    A.      Amendment of Records

        1.      Failure to Exhaust

Initially, Defendant contended that Plaintiff had failed to exhaust her administrative

remedies in failing to appeal the final decision of the agency to the Office of Personnel

Management ("OPM").  However, Defendant now concedes that Plaintiff has exhausted her

administrative remedies.

Although Defendant concedes the question of exhaustion, Plaintiff's claim with respect to

her medical records is flawed, as she asserts her claim against an entity that no

longer has control of the documents.  The requested amendment of records of medical

certification in Plaintiff's EEO file would ordinarily be a part of the governmentwide system of

records as a GOVT-3 record, and thus would ordinarily be under the control of the OPM.

However, the system does not "include records, including the action file itself, compiled when

such actions are appealed to the Merit Systems Protection Board (MSPB) or become part of a

discrimination complaint record at the Equal Employment Opportunity Commission (EEOC)." See 65 Fed. Reg. 24732-01 (Apr. 27, 2000).  Instead, "[s]uch appeal and discrimination complaint file records are covered by the appropriate MSPB or EEOC system of records."  Id.  If Plaintiff had sought their amendment prior to her appeal, her appeal to the OPM would have sufficed.  Now, because she has appealed to the MSPB, the records are not controlled by either the VA or the OPM, but rather are contained in the MSPB's system of records.  Thus, to the extent that Plaintiff seeks to amend these records, the regulations concerning their amendment are contained in 5 C.F.R. §§ 1205.21-1205.32.

       2.     Mootness

In addition, three requests made by Plaintiff are now moot.  Although Plaintiff requests that her personnel records be amended to show that she was restored to her Secretary position on August 15, 2005, and that she was not removed for cause, her OPF file has already been amended to reflect that her restoration to service and her continuous employment.  (See Doc. No. 79, Ex. 1.)  In addition, Plaintiff seeks amendment of her records to accurately reflect her accrued leave in a timely manner.  However, a review of Plaintiff's records reveals that her Service Computation Date ("SCD") for her leave is listed as July 14, 1988.  (See Doc. No. 79, Ex. 1.)  As a result, the request to amend her file to accurately reflect her accrued leave is also moot.

However, remaining is her claim that her record be amended to reflect that she was restored to her position as a Secretary, rather than an Office Automation Clerk.  In addition, remaining are her claims that her records should reflect that she was entitled to benefits under the civil service retirement system.

       3.     Alteration of Substance Rather than Form

Plaintiff's requests regarding her reinstatement to the position of Secretary and her membership in the civil service retirement system cannot appropriately be pursued under the Privacy Act. 5 C.F.R. § 297.303 states, "The amendment procedures are not intended to allow a challenge to material that records an event that actually occurred nor are they designed to permit a collateral attack upon that which has or could have been the subject of a judicial, quasi-judicial, or administrative proceeding." 5 C.F.R. § 297.303(a). "The amendment procedures apply to a situation when an occurrence that is documented was challenged through an established judicial, quasi-judicial, or administrative procedure and found to be inaccurately described; when the document is not identical to the individual's copy; or when the document is not created in accordance with the applicable recordkeeping requirements." 5 C.F.R. § 297.303(b). Thus, while Plaintiff's placement in the position of Office Automation Clerk and her placement in the FERS system may have been substantively incorrect, to the extent that such placement occurred, the records in her file accurately reflect what occurred in August 2005. As a result, the proper procedure for Plaintiff to employ in order to correct the error is to pursue the matter before the MSPB.

In addition, as a factual matter, it appears that Plaintiff was *not* placed in FERS, rather than CSRS. The "Earnings and Leave Statement" IRS form that Plaintiff produced during the administrative proceedings below indicates that she was contributing to CSRS rather than FERS. (See Doc. No. 55, Appellant's Response to MSPB's Acknowledgment Order Dated March 27, 2007, at Ex. 8.) This is also evidenced in myriad documents in Plaintiff's OPF file, produced by Defendant. (See, e.g., Doc. No. 79, Ex. 1, Standard Form 50)(noting Plaintiff's retirement plan as "FICA & CS.") Plaintiff has produced no evidence to create a genuine issue of material fact

by contradicting the evidence produced by Defendant.

    B.    Injunctive Relief and Damages for Privacy Act Violations

    Plaintiff also seeks injunctive relief and damages pursuant to the alleged Privacy Act

violations.  To the extent that Plaintiff seeks to enjoin Defendant from using the allegedly altered

records in the course of further litigation, the statute in question does not authorize the relief

requested.  5 U.S.C. § 552 provides that the court may order the relevant agency to amend the

individual's record in accordance with his request, may assess reasonable attorney's fees and

costs, may enjoin the agency from withholding the records and order the production to the

complainant of any agency records improperly withheld, and in instances of willful or intentional

action, may order actual damages.  See 5 U.S.C. § 552a(g)(2)(A)-(4)(B).  Thus, nowhere does the

statute authorize the injunctive relief sought, and the Court cannot fashion remedies that the

statute does not authorize.  See Houston v. United States Dep't of Treasury, 494 F. Supp. 24, 29

(D. C. Cir. 1979)("under the Privacy Act, injunctive relief is available only to order an agency to

amend an incorrect record or to allow an individual to inspect his record"); see also Edison v.

Dep't of Army, 672 F.2d 840, 846 (11th Cir. 1982)(holding that the Privacy Act authorizes only

injunctions in two instances: to amend the individual's record or to order an agency to produce

records); Clarkson v. I.R.S., 678 F.2d 1368, 1375 n.11 (11th Cir. 1982)("The Privacy Act

expressly provides for injunctive relief for only two types of agency misconduct, that is, wrongful

withholding of documents . . . and wrongful refusal to amend an individual's record.").[2]

---

    [2] The Court is in possession of a certified copy of the administrative record before the
MSPB.  The Court notes that to the extent that it has been able to identify the altered material to
which Plaintiff New-Howard refers, the administrative record contains both the original and
altered documents, thus curing any prejudice Plaintiff fears that she may suffer in the course of
future litigation regarding her termination.

Finally, with respect to Plaintiff's claim for damages,  Section 552a provides a cause of action where a claimant can demonstrate "(1) the information [at issue] is covered under the Act as a 'record' contained in a 'system of records'; (2) the agency 'disclosed' the information; (3) the disclosure had an 'adverse effect' on the plaintiff . . . ; and (4) the disclosure was 'willful or intentional.'" Finnerty v. United States Postal Service, No. 03-558, 2006 WL 54345, at *4 (D. N.J. Jan. 9, 2006)(citing Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992)).  To succeed on a claim brought under Section 552a(g)(1)(C), a plaintiff must show that the harm claimed was caused by the alleged violation.  Yu v. United States Dep't of Veterans Affairs, No. 08-993, 2011 WL 2634095, at *9 (July 5, 2011)(citing Skinner v. United States Dep't of Justice and Bureau of Prisons, 584 F.3d 1093, 1097 (D.C. Cir. 2009)).

Here, Plaintiff does not clearly articulate what records she pursues her claim on the basis of.  However, taking each of Plaintiff's claims serially, it is clear that in no instance does she properly allege or produce any evidence of causation.  With respect to her claim on the basis of records regarding her accrued leave, Plaintiff cannot establish a claim for damages on the basis of the alleged failure to timely calculate her accrued leave time.  An explanation of the inaccuracy of Plaintiff's request for damages requires detailing how federal leave is accrued and how the relevant leave provisions function.

Pursuant to 5 U.S.C. § 6307, Plaintiff would have accrued half of a day for each fully bi-weekly pay period for the period from the time that she was originally fired until 2005, the date that she was reinstated.  In fact, Plaintiff's own exhibit reveals that she possessed 1,520 hours of sick leave.  (See Doc. No. 55, Appellant's Response to MSPB's Acknowledgment Order Dated March 27, 2007, Ex. 8.)  However, sick leave may only be used to care for an ailing family

member without a serious medical condition for a maximum of 40 hours per year plus up to an addition 64 hours per year.  See 5 U.S.C. § 6307.  When Plaintiff's leave requests were denied, Plaintiff was informed of this very fact, which formed the basis for the denial of her request. (See Def.'s Ex. A at MSPB00405.)  Plaintiff was notified that she was given the maximum 104 hours of leave.  If the denial of her leave had been based on the failure to restore her accrued leave, as a new employee she would have had nowhere near 104 hours of leave to use.  Thus, the reasons articulated in this letter demonstrate that Plaintiff was given 104 hours of FFLA, the statutory maximum, and was not treated as a new employee and caused to suffer damages as a result.[3]

The sole instance in which a problem occurred with Plaintiff's leave balances was on Plaintiff's first day.  While Plaintiff was told on her first day that her leave had not yet been calculated, she was also told that she would be credited with retroactive leave if her leave request was otherwise approved, and she was so credited with retroactive leave as to her initial request. (Hr'g Tr. 21:18022:12, July 15, 2009.)  This was the only instance in which mention was made of Plaintiff's leave balances, and Plaintiff presents absolutely no evidence of instances in which she was denied leave due to an absence of accrued leave.  As a consequence, Plaintiff can

---

[3] This conclusion was also buffered by Defendant's response to Plaintiff's request to use annual leave, which Defendant appears to concede that Plaintiff had at the time that she requested such leave.  (See Def. Ex. A at MSPB00406.) Annual leave accrues until it totals not more than 30 days.  See 5 U.S.C. § 6304.  Annual Leave requests, however, are considered in light of current and anticipated work loads, and need to be approved in light of those concerns. See Dep't of Veterans Affairs, VA Handbook 5011/14, Hours of Duty and Leave (2007), available at http://www.va.gov/vapubs/viewPublication.asp?Pub_ID=378&FType=2.  Plaintiff's request for annual leave, for a six-month period of time, was appropriately disapproved on the basis of anticipated work loads, rather than on the basis that Plaintiff had not accrued any annual leave.  (See Def. Ex. A at MSPB00406.)

maintain no cause of action for damages on the basis of the failure to maintain records regarding her leave. While Plaintiff may challenge the substance of the decision to deny her leave, Plaintiff cannot pursue a claim for damages where she cannot show that the denial was based upon the failure to maintain accurate records. Similarly, Plaintiff has alleged no causal link between the alleged failure to amend records to reflect that Plaintiff was removed for cause and any damages that Plaintiff has suffered, and the Court cannot conjecture as to any.

Finally, Plaintiff also seeks to damages as a result of the failure to correct EEO investigative files concerning medical records that she submitted, which appear to be in the MSPB system of records. Plaintiff claims that medical certificates that she provided to the agency "were replaced by documents created by agency officials prior to the issuance of the decision to remove her." (Third Amended Compl. at ¶ 176.) While Plaintiff alleges that altered medical documents were used during administrative proceedings, neither her complaint nor any subsequent filings with the Court have articulated more clearly which documents have been altered.

In the interest of thoroughness, the Court has reviewed the record to discern any evidence regarding Plaintiff's claim. In the course of proceedings before the MSPB, Plaintiff contended that certain records had been altered. These claims were limited to (1) Plaintiff's husband's discharge papers from Albert Einstein Medical Center, (2) a letter written from New-Howard's lawyer on August 31, 2005, (3) Plaintiff's submission of a certificate to return to work or school, which was included with the August 31, 2005 letter, (4) Plaintiff's submission of a "Certification of a Health Care Provider," and (5) two letters submitted to the agency subsequent to her proposed removal.

Here, having reviewed the subject documents, the Court cannot conclude that Plaintiff has adduced any evidence showing that Plaintiff's eventual removal had to do with the substance of the purported alterations, meaning that Plaintiff fails to produce evidence of the causation alleged. The first alleged alteration was of Plaintiff's husband's discharge papers. However, Plaintiff was informed at various junctures that discharge paperwork was insufficient to support a leave request, meaning that discharge papers, no matter their content, could not have supported a request for leave. The second and third alleged alterations consist of the alteration of a letter composed by Lucretia Clemons on August 31, 2005 and the attached doctor's note. (See Def.'s Ex. A at MSPB00350-351.) On September 2, 2005, Thomas Graham informed Plaintiff that needed to provide documentation explaining that the employee was needed to provide physical or psychological care for the family member and instructing Plaintiff to have a WH-380 form completed to support her leave request. (See Def. Ex. A at MSPB000468.) The document submitted by Plaintiff's lawyer, then, was insufficient even in its original form, and Plaintiff has adduced no evidence that the problems alleged by Graham had anything to do with the alleged alteration.

The fourth alleged alteration was to the second set of documents that Plaintiff submitted to support her leave request, submitted on September 15, 2005. (See Def.'s Ex. A at MSPB000352-57.) The original paperwork left several questions on the form unanswered. (See Id.) Defendant's initial correspondence with Plaintiff indicated that the paperwork submitted was insufficient. Defendant again informed Plaintiff that the paperwork submitted was insufficient. (See Def.'s Ex. A. at MSPB000405.) The fifth and sixth alleged alterations concerned documents that were composed subsequent to the notice of proposed removal. As a

18

result, although there is some evidence that the documents were altered, absolutely no evidence or reasoning has been asserted to show that the alterations were in any way material to the determinations that Defendant ultimately made concerned Plaintiff's employment.

In addition, to pursue a claim for damages under the Privacy Act, the adverse effect suffered by a plaintiff must constitute more than a mere attempt to revisit or review adverse employment decisions. See Finnerty, 2006 WL 54345 at *9; see also Orsay v. United States Dep't of Justice, 289 F.3d 1125, 1129-30 (9th Cir. 2002). Here, to the extent that Plaintiff seeks damages solely based upon her removal, which she claims was premised on the allegedly altered records, Plaintiff's claims appear to be "disguised claims for review of the [agency's] determination." Finnerty, 2006 WL 54345 at *10. As such, they are preempted by the CSRA. Id.

Finally, we note that to the extent that Plaintiff claims harm due to the alleged alteration of records in the review of the decision against her, the administrative record contains unaltered versions of all of the records that the Court has been able to identify as having been changed. The administrative law judge reviewing the record noted this fact before he issued his decision reviewing the final agency decision in the matter before him. (See Administrative Hr'g, 95:20-95:22, July 15, 2009.) Therefore, the Court finds that Plaintiff's claims both for amendment of her administrative records, as well as her claims for damages, cannot survive summary judgment.

IV.    Review of Agency Decision

Plaintiff next seeks to review the MSPB's determination that Plaintiff's removal was proper, and that Plaintiff was not removed on the basis of discrimination or in retaliation for her activity in reporting discriminatory behavior.

While ordinarily the United States Court of Appeals for the Federal Circuit reviews appeals of final decisions by the MSPB, in cases of discrimination, the proceedings need not be filed in that court.  See 5 U.S.C. § 7703(b)(1) and (2).  Although the Third Circuit has not explicitly held on the issue, it has noted in dicta that district courts have jurisdiction over "mixed cases."  See Kligman v. I.R.S., 272 Fed. App'x 166 (3d Cir. 2008)("District courts, however, do have jurisdiction over 'mixed' cases decided by the MSPB.").  Other Circuits have found that in "mixed cases," meaning cases where one alleges both employment discrimination as well as claims of procedural violations, a district court employs a bifurcated standard of review to review both sets of claims.  Makky v. Chertoff, 489 F. Supp. 2d 421, 428-29 (D.N.J. 2007).

In mixed cases, a district court employs a de novo standard to claims of discrimination but applies the arbitrary and capricious standard of Section 7703(c) to its review of all other claims brought before the MSPB.  Id.; see also Kelliher v. Veneman, 313 F.3d 1270 (11th Cir. 2002)(finding that in mixed cases, "the district court has jurisdiction to review both the discrimination and non-discrimination claims," and reviews the discrimination claims de novo, while reviewing other claims under the standard set forth in 5 U.S.C. § 7703(c)); Carr v. Reno, 23 F.3d 525, 528 (D.C. Cir. 1994)("We review de novo the MSPB's findings under the Rehabilitation Act, but we review findings under the Civil Service Reform Act on the administrative records under an arbitrary and capricious standard."); Mason v. Frank, 32 F.3d 315, 317 (8th Cir. 1994)(noting that when a district court reviews a case containing a nondiscrimination claim as well as a discrimination claim, the court "reviews the discrimination claim de novo and the nondiscrimination claim on the administrative record under 5 U.S.C. § 7703(c)."); Williams v. Rice, 983 F.2d 177, 179-80 (10th Cir. 1993)(finding that in a "mixed

case," discrimination claims are reviewed de novo while nondiscrimination claims are reviewed

on the administrative record); Morales v. Merit System Protection Bd., 932 F.2d 800, 802 (9th

Cir. 1991)(noting that claims involving discrimination are reviewed de novo while

nondiscrimination claims are reviewed on the administrative record in "mixed cases"); Williams

v. Dep't of Army, 715 F.2d 148, 1491 (Fed. Cir. 1983)(concurring that district courts have

jurisdiction to hear "mixed cases").

We thus apply a deferential standard of review to Plaintiff's nondiscrimination claims,

and a de novo standard of review to her Title VII claims.

A.     Nondiscrimination Claims

The uncontested facts regarding Plaintiff's leave requests are as follows.  Plaintiff

returned to work, with a position as an Office Automation Clerk on August 15, 2005.  (See

Def.'s Ex. A at MSPB000344.)  Judge Rudsill further found that Plaintiff New-Howard

approached Farmer, her immediate supervisor, with a request for a leave slip for the next day.

Farmer inquired with Human Resources about New-Howard's leave, and was informed that her

leave restoration had not been processed.  New-Howard was told to request leave without pay

("LWOP") for her absence.  Leave was approved for her August 16, 2005 absence.  (Def.'s Ex. A

at MSPB000919 - MSBP000925.)

The record provides evidence that New-Howard came to work on August 17, 2005 and

promptly requested more leave to take her husband to the doctor.  (Def's Ex. A. at MSPB000923

- MSPB00925.)  New-Howard further informed Farmer that because her husband had an ongoing

medical condition, she would need periodic leave to care for him.  (Id.)  While Farmer informed

Plaintiff that she would need to make a formal request for LWOP, including a detailing of the

dates of absence and medical documentation to support the request, and that such a request would have to be approved by the Division Chief, Plaintiff left without submitting the request to the Division Chief.  (Def.'s Ex. A at MSPB000924-54.)  Instead, Plaintiff left an unapproved slip in her cubicle for August 17, 2005 through August 30, 3005.  (Def.'s Ex. A. at MSP000954.)  Plaintiff has adduced no contrary evidence.  This leave request was initially denied.

On August 30, 2005, Ms. Farmer instructed Plaintiff to return to work, a directive with which Plaintiff did not comply.  (Def.'s Ex. A at MSPB000486.)  On August 31, 2005, Plaintiff faxed a one-page medical document to the agency's finance department, in which she requested an additional 30 days of leave.  (Def.'s Ex. A at MSPB000350-51.)  In addition, Plaintiff's then-attorney, Lucretia Clemons, requested an additional six-months of leave for the period from September 28, 2005 to March 28, 2006.  (Id.)

On September 2, 2005, the Division Chief informed Plaintiff that her request for FMLA leave was denied because the medical documentation was not administratively acceptable, and advised Plaintiff of the procedures for requesting FMLA and leave under the Family Friendly Leave Act ("FFLA").  (Def.'s Ex. A at MSPB000468-85.)  In the interim, on September 15, 2005, Clemons submitted additional documentation in support of Plaintiff's request for FMLA leave from August 16, 2005 through September 27, 2005.  (Def.'s Ex. A at MSPB000352-57.)  Plaintiff was granted FFLA leave for the period from August 31, 2005 through September 16, 2005.  (See Def.'s Ex. A at MSB000414.)  In addition, the request for six-months of annual leave was denied due to staffing needs.  (See Def.'s Ex. A at MSPB000451.)  Annual leave was approved for October 17, 2005 through October 21, 2005 and December 22, 2005 through December 29, 2005.  (Id.)  In addition, Plaintiff was directed to return to work.  (Id.)  Plaintiff did

not comply with this instruction.

Plaintiff also submitted an additional request for leave from a period extending from August 16, 2005 through October 4, 2005 and requested clarification regarding her requests for leave.  Plaintiff also submitted a request for leave from October 5, 2005 through an undetermined date for her own medical needs, submitting a form completed by a clinical psychologist, Melvin Rogers, Ph. D., asserting that he was treating Plaintiff for anxiety.  On October 28, 2005, Waldt reiterated the various decisions explained above regarding Ms. New-Howard's requests for leave. (See Def.'s Ex. A at MSPB000405-07.)  In addition, Waldt deemed the information submitted by Rogers insufficient, and provided a medical questionnaire and WH-380 to be completed by Rogers.  (Id.)  The completed forms were received by the union representative for the VA on December 16, 2005.  (See Def.'s Ex. A at MSPB000956.)  New-Howard was granted FMLA leave from December 16 through January 15th.  (See Def.'s Ex. A at MSPB000956.)  On January 17, 2006, New-Howard contacted Farmer via letter, stating that she required more leave time. (See Def.'s Ex. A at MSPB000384.)  In addition, on the same date, Rogers sent in a letter certifying that New-Howard remained under his care for "intense emotional reactions and stress." (Def.'s Ex. A at MSPB00385.)

On February 3, 2005, Waldt rejected the request to extend FMLA leave, explaining that the documentation submitted was administratively unacceptable to approve the request.  (See Def.'s Ex. A at MSPB000375.)  In this communication, Waldt enclosed another medical questionnaire and emphasized that Rogers was to answer every question included, and she advised it was to be returned by February 16, 2005.  (Id.)  On February 27, 2006, after the completed form had not been returned, New-Howard was sent a notice of proposed removal.

23

(Def.'s Ex. A at MSPB000372-73.)

Following New-Howard's contact with the VA's Office of Resolution Management, on June 30, 2006, New-Howard was notified that she would be removed effective July 9, 2006. The basis for Plaintiff's removal was excessive and continuous absence from work from the period extending from August 17, 2005 through June 30, 2006. In addition, the letter noted that New-Howard had failed to follow proper leave procedures. While some of the absences within the relevant time period were permissible because leave had been appropriately obtained, the letter noted that the bulk of the absences were unapproved. (Def.'s Ex. C at DNH00429-30.)

The standard of review applicable to the nondiscrimination claims present in this action is detailed in 5 U.S.C. § 7703(c). Thus, this Court must review the record and set aside an agency decision, findings, or conclusions of law found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (2) obtained without procedures required by law, rule, or regulation having been followed, or (3) unsupported by substantial evidence. 5 U.S.C. § 7703.

Which of the standards apply to a particular issue depends on the nature of the agency action and the question presented. Campbell v. Merit Sys. Protection Bd., 27 F.3d 1560, 1564 (Fed. Cir. 1994). Conclusions of fact in agency adjudications are governed by the substantial evidence test. Id. This test "requires courts to defer as long as the record contains evidence from which one reasonably could draw the challenged inference – even though there is other evidence which, if believed, would permit the contrary inference." Id. Another court has characterized substantial evidence as "more than a mere scintilla" or rather, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Young v. Sullivan, 911 F.2d

180, 183 (9th Cir. 1990). By contrast, conclusions of law are reviewed de novo. Campbell, 27

F.3d at 1564.[4]

Proceeding to the merits of the question at hand, the Court first addresses the question

whether the ALJ's determination that removal was not wrongful is supported by substantial

evidence. Pursuant to 5 U.S.C. § 7513, an agency may remove an individual "only for such

cause as will promote the efficiency of the service." An agency must establish three factors to

withstand challenge to an adverse action against an employee: (1) the charged misconduct

occurred, (2) a nexus existed between the misconduct and the objective of promoting the

efficiency of the service, and (3) the penalty imposed was reasonable. Bradley v. Dep't of

Veteran Affairs, 179 Fed. App'x 690, 692 (Fed. Cir. 2006) (citing James v. Dale, 355 F.3d 1375

(Fed. Cir. 2004)); see also Francisco v. U.S. Postal Servs., 106 Fed. App'x 732, 734 (Fed. Cir.

2004).

In the instant case, the administrative law judge, Judge Michael T. Rudsill, found that the

employee engaged in misconduct, as she was absent without leave ("AWOL") for an extended

period of time. New-Howard v. Dep't of Veterans Affairs, No. PH-0752-07-0319-I-2, at 4-9

---

[4] As a side note, we distinguish Plaintiff's action from an action for the denial of leave
pursuant to the Family Medical Leave Act ("FMLA"). Plaintiff challenges her removal for cause
and the denial of her request for FMLA leave. While Title II governs leave for federal civil
service employees with more than twelve months of service, Title I governs leave for private
employees and federal employees not governed by Title II. Russell v. U.S. Dep't of the Army,
191 F.3d 1016, 1018 (9th Cir. 1999). Thus, Plaintiff's action is a Title II action. As a result, as a
Title II employee, Plaintiff may not maintain a cause of action for violations of the provisions of
FMLA. See id.; Mann v. Haigh, 120 F.3d 34, 37 (4th Cir. 1997). However, Plaintiff does not
pursue a cause of action against the government for a violation of FMLA. Instead, she petitions
for review of the determination of the MSPB on the grounds that her removal was wrongful, and
she asserts that she should not have been removed because she was entitled to FMLA leave.
Plaintiff is entitled to such review pursuant to 5 U.S.C. § 7703 (a)(1).

(M.S.P.B. July 23, 2009)(initial decision).  Further, Judge Rudsill concluded that a nexus existed

between the misconduct and the objective, appealing to the legal principle that an unauthorized

absence from duty is inherently connected to the efficiency of the service.  Id. at 15.  Finally,

applying the relevant legal standard, Judge Rudsill concluded that the penalty of removal was

reasonable.  Id.  Plaintiff does not contest Judge Rudsill's findings regarding the nexus or his

determination that the penalty of removal was reasonable, but instead argues that she was

improperly denied leave.  We thus review the determination of Judge Rudsill to determine

whether his findings of fact were supported by substantial evidence, and we review his

conclusions of law de novo.

Judge Rudsill first addressed the question of whether Plaintiff engaged in misconduct, in

this case, examining the question of whether Plaintiff was absent without leave.  Judge Rudsill's

statement of the law was correct.  To prove a charge that one is AWOL, an agency must show the

employee was absent and either the absence was not authorized or that a request for leave was

properly denied.  See Johnson v. Dep't of Treasury, 429 Fed. App'x 964, 967 (Fed. Cir.

2011)(citing Cooke v. United States Postal Service, 67 M.S.P.R. 401, 404 (1995)).  Plaintiff did

not contest that she was absent during the relevant time period.  Instead, Plaintiff maintained that

her request for leave was not properly denied.  In examining the issue of whether Plaintiff's leave

was properly denied, Judge Rudsill noted that Plaintiff failed to comply with several procedural

strictures in requesting leave.  As a result, Rudsill found that the leave request was properly

denied, and found that given these failures, misconduct occurred.

In examining Judge Rudsill's decision, we examine each type of leave requested.

1.      FMLA Leave

The question of whether Plaintiff's FMLA leave was properly denied is a question of law, and we consequently review it de novo.  Under FMLA a federal employee is entitled to up to twelve weeks of unpaid leave within a twelve-month period in order to care for a spouse that "has a serious health condition."  5 U.S.C. § 6382 (a)(1)(C).  In addition, a federal employee may take such leave where he or she has a "serious health condition that makes the employee unable to perform the functions of the employee's position."  5 U.S.C. § 6382(a)(1)(D).  A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition" that entails either inpatient care in a hospital, hospice, or a residential medical care facility or continuing treatment by a health care provider.  See 5 U.S.C. § 6381 (5).

The Code of Federal Regulations articulates certain procedural requirements in order to obtain FMLA leave.  In particular, pursuant to 5 C.F.R. § 630.1207, if leave is taken based on planned medical care, and employee is required to "provide notice to the agency of his or her intention to take leave not less than 30 calendar days before the date the leave is to begin."  5 C.F.R. § 630.1207.  In addition, the regulation provides, "If the date of birth or placement or planned medical treatment requires leave to begin within 30 calendar days, the employee shall provide such notice as is practicable."  Id.

Additionally, the Code of Federal Regulations provides that an agency may require that a request for leave be supported by written medical certification issued by a health care provider.  See 5 C.F.R. § 630.1208.  The written medical certification must include (1) the date the serious health condition commenced, (2) the probable duration of the serious health condition or a specification that the condition is chronic or continuous with an unknown duration, (3) whether the patient is presently incapacitated and the likely duration and frequency of episodes of

incapacity, and (4) the appropriate medical facts within the knowledge of the health care provider regarding the serious health condition, including a general statement as to the incapacitation, examination, or treatment that may be required by a health care provider.  5 C.F.R. § 630.1208.

In addition, where an individual seeks leave to care for a spouse with a serious medical condition, that individual must produce (1) a statement from the health care provider that the spouse, son, daughter, or parent of the employee (a) requires psychological comfort and/or physical care, (b) needs assistance for basic medical, hygienic, nutritional, safety, or transportation needs or in making arrangements to meet such needs, and (c) would benefit from the employee's care or presence and (2) a statement from the employee on the care he or she will provide and an estimate of the amount of time needed to care for his or her spouse.  See 5 C.F.R. § 630.1208(b)(4)(I) and (ii).[5]  Given the facts, as Judge Rudsill reported them above, there was substantial evidence to support Judge Rudsill's findings that Plaintiff was properly denied FMLA leave.

Substantial evidence also exists showing that Plaintiff failed to provide appropriate medical documentation to support her FMLA requests.  A review of the facts noted above reveals that Plaintiff ultimately requested leave to care for her husband from August 18, 2005 through October 4, 2005.  In addition, Plaintiff ultimately requested leave due to her own condition from

---

[5] Stated differently, a medical certification is sufficient where it states (1) the date on which the serious health condition commenced, (2) the probable duration of the condition, (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition, (4) a statement that the employee is needed to care for the relative in question and an estimate of the amount of time such employee is needed, (5) where the individual is seeking leave for himself, a statement that the individual is unable to perform the functions of the position of the employee, (6) and in the case of intermittent leave, or leave on a reduced schedule for planned medical treatment, the dates on which such treatment is expected to be given and its duration.  5 U.S.C. § 6383.

October 5, 2005 through February 27, 2006.

The certification first provided by New-Howard as to her husband was inadequate to support the request for leave.  The first set of documentation that New-Howard submitted to support her request for leave consisted of a single document entitled "Certificate to Return to Work or School."  (Def.'s Ex. A at MSPB000351.)  While the document stated that Plaintiff's husband had undergone surgery to remove a necrotic toe on July 28, 2005, the documentation did not explain the appropriate medical facts within the knowledge of the health care provider, nor did it include information on whether New-Howard was required to care for her husband or the duration of such care.  The second set of documents, which included a certification from a health care provider regarding Plaintiff's husband condition, were submitted on September 15, 2005.  (Def.'s Ex. A at MSPB000355-57.)  A substantial portion of this form, however, was not filled out, and the doctor completing the form inserted "N/A" into the last nine subparts included in the form.[6]  (See id.)  On September 29, 2005, a form was submitted which consisted solely in a two line note from Edgar Howard's doctor, which read, "Deonne may return to work on 10-4-06."  (See Def.'s Ex. A at MSPB000455.)

New-Howard's final set of documentation regarding her request for leave to care for her husband was submitted on October 17, 2005.  In this set of documents, with reference to her husband's condition, Plaintiff submitted two SF-71 forms.[7]  These forms merely asked the

---

[6] New-Howard did specify how she would care for Edgar Howard, indicating that she would change his dressing three times a day, cook meals, take her husband to his appointments, ensure that he took his medication on time, and provide moral support. (Def.'s Ex. A at MSPB000355-57.)

[7] The set of forms also included a request for leave based on New-Howard's own condition, which is discussed below.

reviewer to "[p]lease see previous documentation submitted."  (Def.'s Ex. A at MSPB000365.)

New-Howard also included a request for FFLA leave from August 16 ,2005 to October 4, 2005,

but did not provide any underlying support.  (See Def.'s Ex. A at MSPB 000366.)  Thus, Judge

Rudsill's determination that the information provided was insufficient to support FMLA leave is

supported by substantial evidence.  At best, the documentation provided only a label for the

condition at issue and the duration of the condition, but no further description regarding the

appropriate medical facts, such as a "general statement as to the incapacitation, examination, or

treatment that may be required by the health care provider," or a statement about the need for

New-Howard to care for her husband.  See 5 C.F.R.§ 630.1208 (b)(3) and (4).

Substantial evidence also supports Judge Rudsill's conclusion that New-Howard's

documentation, for the purposes of FMLA leave, with respect to her own condition was lacking

as well.  The first set of documents submitted to support her own claim for leave was provided

on October 17, 2005.  In that correspondence, New-Howard enclosed an SF-71 form, which

noted only that she was requesting leave for her own medical conditions from October 5, 2005 to

an unspecified date, and requested that the reviewer "Please see attached documentation."  The

attached documentation consisted solely of a letter from Rogers, stating that New Howard was

under his professional care for "intense emotional reactions and stress" and that she was not to go

to work until she was released by him.  (See Def.'s Ex. A at MSPB000367-68.)  Thus, Rudsill's

conclusion that Plaintiff did not provide any information regarding (1) the date on which the

serious health condition commenced, (2) the probable duration of the condition, or (3) the

appropriate medical facts within the knowledge of the health care provider regarding the

condition was supported by substantial evidence.

New-Howard next faxed documentation to the VA on December 16, 2005.  This documentation provided that New-Howard suffered from anxiety and depression, and that the likely duration of the condition was until January 15, 2006.  In this certification, her psychologist further attested that New-Howard was not able to perform her regular duties or work of any kind.  (Def.'s Ex. C at DNH000109-117.)  New-Howard was subsequently granted leave until January 15, 2006.  Although some evidence exists suggesting that New-Howard may have faxed the documentation at an earlier date, Judge Rudsill found that the materials were first faxed on December 16, 2005, and substantial evidence exists supporting his determination, including the testimony of New-Howard's superior that she did not receive a fax until December.  (See Administrative Hr'g Tr., 57:2-57:22, July 15, 2009.)   However, as noted above, when New-Howard requested additional time for leave, all that was submitted was a letter on January 17, 2005, stating that New-Howard was still under Rogers' care for "intense emotional reactions and stress." (Def.'s Ex. A at MSPB000385.)

New-Howard subsequently contacted the VA regarding more leave, but, as noted above, failed to provide sufficient documentation.  Thus, while sufficient paperwork existed to support her request for leave until January 17, 2005, Carol Winter determined that the paperwork was insufficient to support continuing leave, and communicated the problem to New-Howard.  However, no further paperwork was submitted to support her request for leave.  Thus, substantial evidence exists to support Rudsill's determination that New-Howard was properly denied FMLA leave for the period after January 17, 2006.

2.	Annual Leave

Judge Rudsill also noted that annual leave was properly denied for projected workload

reasons.  It was proper for the agency to deny such leave on the grounds that it stated.  See, e.g.,

Def.'s Ex. A at MSPB00406; Dep't of Veterans Affairs, VA Handbook 5011/14, Hours of Duty

and Leave (2007), available at http://www.va.gov.  Thus, Judge Rudsill's determination that

annual leave could be denied upon this basis was also correct.

       3.     Sick Leave

Although Judge Rudsill made extensive findings regarding the denial of FMLA leave and

properly considered the issue of annual leave, he failed to consider the issue of sick leave in his

opinion.  Judge Rudsill noted that Plaintiff had raised the issue of the denial of sick leave, but

made no findings as to whether her requests for sick leave were properly denied.  (See Def.'s Ex.

A at MSPB000585-93.)  Thus, though it appears that Plaintiff's request for use of sick leave may

have been properly denied due to a lack of sufficient documentation,[8] (see, e.g., Def.'s Ex. A at

MSPB00406 ¶ 8), as a reviewing court, we cannot make findings of fact, and only review the

findings of the administrative court.  Moreover, although our review is deferential, we cannot

affirm an agency decision where the agency has itself made no findings of fact.

Without making findings as to Plaintiff's sick leave requests, Judge Rudsill could not find

that Plaintiff was AWOL on the dates identified in the proposed notice of removal.  As a result,

---

[8] "An agency may grant sick leave only when the need for sick leave is supported by administratively acceptable evidence. . . . An agency may also require a medical certificate or other administratively acceptable evidence as to the reason for an absence for any of the purposes described in § 630.401(a) for an absence in excess of 3 workdays."  5 C.F.R. § 630.405.  The VA handbook on sick leave provides, "An employee on sick leave for more than 3 workdays must enter a leave request into the ETA or other electronic system upon return to duty, and furnish satisfactory evidence of the need for sick leave during the period of absence.  If the medical certificate is not considered a reasonable basis for approval of sick leave, the employee may be required to furnish additional evidence."  See Dep't of Veterans Affairs, VA Handbook 5011/15, Hours of Duty and Leave (2007), available at http://www.va.gov.

we must remand the matter to the MSPB for the limited purpose of making findings as to whether the agency properly denied Plaintiff's requests for sick leave.

      B.      Claims Regarding Discrimination Under Title VII

As noted above, Plaintiff's claims regarding discrimination are subject to a de novo standard of review.  Makky v. Chertoff, 489 F. Supp. 2d 421, 428-29 (D.N.J. 2007).  To state a claim under Title VII, a plaintiff may present either direct evidence of discriminatory intent or indirect evidence of discrimination under the framework provided in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Mieczkowski v. York City School Dist., 414 Fed. App'x 441, 444 (3d Cir. 2011).

In the absence of a direct evidence of discrimination, a plaintiff may prove discrimination under the familiar burden-shifting framework set forth in McDonnell Douglas, under which a three part formulation governs the Court's analysis.  First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)(citing McDonnell Douglas, 411 U.S. at 802).  Second, "if the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'"  Burdine, 450 U.S. at 253 (citing McDonnell Douglas, 411 U.S. at 802).  Finally, if the defendant is able to carry this burden, the plaintiff must have the opportunity to prove by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Id.

In order to establish prima facie Title VII claim, one must produce evidence that (1) he or she is a member of a protected class, (2) he or she was qualified for the position that he or she

sought to attain or retain, (3) he or she suffered an adverse employment action, and (4) the action occurred under circumstances that could rise to an inference of intentional discrimination.  Risk v. Burgettstown Borough, PA, 364 Fed. App'x 725, 729 (3d Cir. 2010).

In the instant case, Plaintiff pursues claims under Title VII based upon claims of discrimination on the basis of age, race, and disability.  Plaintiff's complaint alleges that Plaintiff was the victim of unlawful discrimination in that she (1) was not restored to her GS-3 Secretary position when she returned to work, (2) was locked in a room for several hours on the day of her return, (3) was denied FMLA leave and annual leave for her husband's condition, (4) was denied leave for her own condition, and (5) was ultimately removed.

     1.     Failure to Exhaust

          a.     Age and Disability Discrimination

As an initial matter, Defendant contends that Plaintiff failed to exhaust her administrative remedies as to her claims for age and disability discrimination.  An aggrieved employee may begin a civil action only after she has exhausted administrative remedies.  See 42 U.S.C. § 2000e-16(c); Waiters v. Parsons, 729 F.2d 233 (3d Cir. 1984)(holding that before filing a Title VII suit, a federal employer must file a complaint with the EEOC and allow time for the EEOC to resolve the dispute).  In addition, an individual must contact an agency counselor for pre-complaint counseling within 45 days of the date of the discriminatory action.  See 29 C.F.R. § 1614.105(a)(1).  A plaintiff is "required to properly exhaust [her] administrative remedies" with respect to her Title VII claims, and the failure to contact an agency counselor within 45 days of the alleged discriminatory action can result in the dismissal of her action against an agency.  See Wadhwa v. Secretary of Dep't of Veterans Affairs, 396 Fed. App'x 881, 885 (3d Cir. 2010).

In the instant case, the record reveals that Plaintiff first contacted the Equal Employment Opportunity ("EEO") counselor at the VA Office of Resolution Management on March 9, 2006. (Doc. No. 91, Ex. 1 at VA001897.)   Plaintiff's complaints concerned discrimination on the basis of race, reprisal for prior protected activity, and gender.  (See Doc. No. 91, Ex. 2 at 1892-94.) Plaintiff filed a formal complaint of employment discrimination on the bases of race, reprisal for prior protected activity, and gender on June 2, 2006.  (See Doc. No. 91, Ex. 3 at VA001902.) Plaintiff's claims for those bases of discrimination were accepted for investigation on July 13, 2006.  (Doc. No. 91, Ex. 4 at VA001907-08.)   An investigation was conducted regarding these claims, which concluded on January 11, 2007.  (See Doc. No. 91, Ex. 6 at VA001943.)   The final agency decision regarding these three bases was issued on January 23, 2007.  (Doc. No. 91, Ex. 7, at VA001970.)

The record does not reveal any evidence that Plaintiff filed either formal or informal complaints regarding discrimination on the basis of disability or age.  Pursuant to 29 C.F.R. § 1614.302, "An aggrieved person may initially file a mixed case complaint with an agency pursuant to this part or an appeal on the same matter with the MSPB," but not both.  See 29 C.F.R. § 1614.302.   In this case, Plaintiff pursued her claims before the agency, received a final agency decision, and then appealed this decision to the MSPB pursuant to 29 C.F.R. § 1614.302(d)(ii).   Not until the MSPB appeal was taken did Plaintiff raise claims of discrimination on the basis of age or disability.  Therefore, these claims must be dismissed for failure to exhaust.[9]

_____

[9] Although the ALJ below appears to have considered the issue of disability discrimination in the proceedings before the MSPB, there is absolutely no evidence showing that Plaintiff raised those claims before the EEO Counselor at the VA.

In her supplemental briefing on this matter, Plaintiff argues that the VA failed to accurately record the bases for her discrimination claims, and that she properly asserted claims of disability and age discrimination at the time that she filed her informal complaint.  She further asserts that she did not correct the error when she received a "Notice of Right to File a Discrimination Complaint" because the "Complaint of Discrimination" had been filled out by the agency, and she had only fifteen days to file a formal complaint.  However, exhaustion is strictly construed.  See Farris v. Shinseki, 660 F.3d 557, 563 (1st Cir. 2011).  A failure to comply with an agency's applicable time limit can expose a plaintiff's federal lawsuit to dismissal.  Id.  While "equitable tolling" or "estoppel" can excuse a failure to exhaust, these doctrines are narrow.  Id.

A plaintiff can demonstrate a right to equitable tolling where he demonstrates "circumstances beyond his or her control precluded a timely filing."  Id.  However, equitable tolling will not rescue a plaintiff "from his or her lack of diligence."  Id.  Plaintiff appears to assert that "affirmative misconduct on the part of the defendant lulled the plaintiff into inaction," which constitutes a ground for equitable tolling.  See id. (citing Baldwin Cnty. Welcome Center v. Brown, 466 U.S. 147, 151(1984)).

Assuming the truth of Plaintiff's assertion on this motion for summary judgment,[10] although the misconduct that Plaintiff alleges may explain her initial failure, it does not excuse

---

[10] We note that Plaintiff attached no affidavits in which she asserted that she reported claims on the basis of disability and age discrimination, which the EEO counselor failed to record.  Rather, she presented this assertion only as argument.  Thus, Plaintiff has not supported her assertion by either "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute."  See Fed. R. Civ. P. 56 (c)(1).  Given Defendant's offer of evidence evidencing that Plaintiff failed to exhaust, then, no genuine issue of material fact exists at present.

her failure to cure the matter at any time prior to the period after which the 45-day period would

have run.  Plaintiff received a notice of proposed removal on February 27, 2007, and initiated

contact regarding her discrimination claims in early March. While she avers that her EEO

counselor failed to properly record her claims, by her own admission, she signed off on the filing

of a formal complaint on the basis of race, gender, and retaliation on June 3, 2006, without

adding in the other claims that she avers she asserted during informal counseling (see Doc. No.

98 at 2).  Moreover, it is at least clear that there is not issue of fact that at the time she received

the complaint in June, she would have become aware of the alleged error committed by the

individual who recorded her claim.  However, Plaintiff was not formally removed until July.

Yet, though she would have still fallen well within the 45-day period to file an informal claim,

given that she had not yet been formally removed, she failed to file a claim on the bases that were

not included.

b.  Incidents Taking Place Before December 2005

Defendant next contends that Plaintiff has failed to exhaust administrative remedies with

respect to a number of incidents occurring in 2005.  Defendant again contends that Plaintiff's

contact with the Equal Employment Opportunity ("EEO") counselor took place more than 45

days after the some, but not all, of the alleged discriminatory action.

Plaintiff contacted the VA Office of Resolution Management ("ORM") on March 2,

2006.  In her contact with the office, Plaintiff lodged two claims, asserting harassment and

asserting a claim in connection with her proposed removal.  However, Defendant contends that

Plaintiff failed to initiate contact with the EEO Counselor for the agency within 45 days of (1)

her reinstatement to the incorrect position, (2) the incidents occurring on August 16, 2005, and

(3) the denial of leave for her husband's absence.  Defendant, alternatively, does not contest that Plaintiff did initiate contact with the EEO Counselor regarding her termination and her request for leave based on her own illness within 45 days.  In her opposition to the motion for summary judgment, Plaintiff avers that the doctrine of "continuing violations" should toll the 45-day period.

As noted above, plaintiffs in Title VII actions against the government must properly exhaust administrative remedies.  See Wadhwa, 396 Fed. App'x at 885 (3d Cir. 2010).  This includes a requirement that an employee "must initiate contact with a Counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).

Plaintiff's claims regarding the incidents that took place on August 16, 2005, which include Plaintiff's allegations that she was (1) not restored to her GS-3 Secretary position (2) was locked in a room, (3) was not given keys to her desk, and (4) was processed as a new employee when she returned to work, are clearly time-barred.  Plaintiff's attempt to use the doctrine of continuing violations misconstrues the doctrine.  Under the continuing violations doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."  Magadia v. Napolitano, 2009 WL 510739, at *11 (S.D.N.Y. Feb. 26, 2009)(citing National Railroad Passenger Corp. v. Morgan, 539 U.S. 101, 113 (2002)).  The continuing violations doctrine applies where a plaintiff files a single timely charge of discrimination as to any incident of discrimination in furtherance of an ongoing policy of discrimination, and provides that when a plaintiff does so, all acts of discrimination under that

38

policy will be timely even if they would be untimely standing alone.  Id.

However, the Supreme Court has been careful to distinguish multiple incidents of discrimination, even similar ones, that are not the result of discrimination policy or mechanism. Morgan, 536 U.S. at 114.  Thus, the continuing violations doctrine does not apply to discrete and easily identifiable acts of discrimination, such as "termination, failure to promote, denial of transfer, or refusal to hire."  Id.  These claims are to be distinguished from claims based on a hostile work environment, where such claims are essentially "comprised of a series of separate acts that collectively constitute one unlawful employment practice."  Id.  Plaintiff does not appear to have pled hostile work environment in the instant matter, meaning that she cannot appeal to the doctrine of continuing violations.[11]

---

[11] Plaintiff sought to pursue a claim for hostile work environment before the Office of Resolution Management, but did not pursue that claim any further, and in particular, did not pursue this claim on appeal.  However, regardless, to the extent that Plaintiff pursues a claim for hostile work environment in the instant action, a claim that is not clear from Plaintiff's complaint, Plaintiff fails to adduce sufficient evidence of a hostile work environment claim to survive summary judgment.  To prove a claim for hostile work environment, a plaintiff must show (1) the employee suffered intentional discrimination because of his or her protected status, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same protected status in the same position, and (5) the existence of respondeat superior liability.  See Ulrich v. United States Secretary of Veterans Affairs, 457 Fed. App'x 132, 140 (3d Cir. 2012). Moreover, the conduct in question must be "severe and pervasive enough to create an environment the employee subjectively perceives as abusive or hostile, and an 'objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive.'"  Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  Here, Plaintiff's claim of hostile work environment on the administrative level dealt with the fact that she (1) was processed as new employee although she had previously been employed at the VA, (2) was issued an ID badge that did not function and was therefore locked in the VA, (3) was not provided keys to the desk that she was issued on her first day, (4) was not granted leave, and (5) was not restored to her secretarial position, but instead was placed in the position of Office Automation Clerk.

In the instant case, as is more fully described below, to the extent that Plaintiff has pled a claim for hostile work environment in the instant matter, Plaintiff fails to adduce evidence of the

Applying the time limitation to Plaintiff's claim regarding her restoration to a position other than a GS-03 Secretary, and her claims regarding her treatment on August 16, 2005, Plaintiff failed to institute a complaint within the 45-day period.  Therefore, her claims of discrimination based on these events are dismissed.  See Wadhwa, 396 Fed. App'x at 885 (finding that plaintiff were "required to properly exhaust their administrative remedies" with respect to their Title VII claims, and they failed to contact an agency counselor within 45 days of the alleged discriminatory action, thus failing to meet this requirement).  In addition, her claim that her restoration to the position of Automation Clerk constituted unlawful retaliation was also not timely raised.

Finally, Defendant claims Plaintiff failed to exhaust administrative remedies with respect to the request for FMLA leave to care for her husband.  Plaintiff asserts claims based upon the denial of her leave to care for her husband.  Defendant characterizes these requests for leave as belonging to two waves, one governing her requests for leave to care for her husband, and a second governing her requests for leave pursuant to her own illness.  The first wave, according to Defendant, came to an end on October 28, 2005, when Plaintiff was sent a letter denying leave on the basis of her husband's illness. While Defendant avers that Plaintiff was required to contact an EEO counselor by December 12, 2005, in order to conform to the 45-day rule, Plaintiff has alleged in her complaint that she filed an informal complaint on November 2, 2005.  (See Third Amended Consolidated Comp. At ¶ 141.)  Although no paperwork has been produced evidencing contact with the EEO, Defendant has not expressly refuted Plaintiff's averment.  As a result, an

---

first element of hostile work environment, that she suffered intentional discrimination because of her protected status.  As a result, it matters not whether the doctrine of continuing violations is potentially applicable.

open factual question exists as to whether Plaintiff initiated such contact, and thus did not fail to default on the 45-day period.  As a result, the Court cannot find that Plaintiff failed to exhaust her administrative remedies with respect to her claims for leave to care for her husband.

Finally, we note that with respect to Plaintiff's claims regarding (1) the fact that she was processed as a new employee, (2) that she was issued a nonfunctional ID badge, (3) that she was not given the keys to her desk, and (4) the denial of her leave requests to take care of her husband, the agency originally dismissed these claims, while preserving Plaintiff's claims of discrimination based upon her removal.  (See Certified Copy of Administrative Record, Notice of Partial Acceptance of Your Mixed Case EEO Complaint.)  While Plaintiff ultimately appealed the final agency decision regarding the claim that remained, based upon discrimination in the decision to remove her, she does not appear to have pursued an appeal of the decision of the agency to dismiss her other claims.  Although Plaintiff did not list her in her Form 185 a desire to appeal the decision to remove her on the basis of discrimination, (see Certified Copy of Administrative Record, MSPB Form 185), she appears to have raised the issue as an affirmative defense during a telephonic conference with the parties during the administrative proceedings. (See Certified Copy of Administrative Record, Order and Summary of Pre-Hearing Conference.) However, nowhere does the record reveal any appeal of the decisions regarding the other forms of discrimination that she filed EEO complaints regarding, as she would have been able to do once final action was taken by the agency, after it disposed of the claims that were initially accepted for investigation.  As a result, Plaintiff has defaulted those discrimination claims unrelated to the issue of her removal.  See McAdams v. Reno, 64 F.3d 1137, 1142 (8th Cir. 1995); see also 29 C.F.R. § 1614.107(b)(A determination by an agency to dismiss some, but not

41

all claims, "is not appealable until final action is taken on the remainder of the complaint").

       2.      Prima Facie Case of Discrimination

In order to establish a prima facie case of discrimination, Plaintiff must establish the following four elements: (1) membership in a protected group, (2) qualification for the job in question, (3) an adverse employment action, and (4) circumstances that support an inference of discrimination.  McCullers v. Napolitano, 427 Fed. App'x 190, 194 (3d Cir. 2011).  While Defendant does not contest the first three elements in its motion for summary judgment, it asserts that the fourth element, which requires proof of circumstances supporting an inference of discrimination, is not met.

We concur with the Defendant that Plaintiff has failed to produce any evidence in support of a prima facie case of discrimination on the basis of race or retaliation for protected activity.  In the analysis that follows, we address each protected category in turn.

       a.      Race[12]

Defendant contends that Plaintiff has failed to adduce proof either of direct evidence of discrimination or of circumstances supporting an inference of discrimination on the basis of race.

The McDonnell Douglas test is inapplicable where there is direct evidence of discrimination.  TransWorld Airlines v. Thurston, 469 U.S. 111, 121 (1985).  However, where no such evidence exists, the McDonnell Douglas test requires evidence of circumstances supporting an inference of discrimination.  A common method of adducing proof of circumstances

---

[12] We note, as well, that although Plaintiff originally alleged racial discrimination before the agency EEO Officer, and further filed a formal complaint, Plaintiff did not argue the issue of race discrimination before the Merit Systems Protection Board, and thus appears to have defaulted this claim.  (See generally Doc. No. 97.)

supporting an inference of discrimination is the use of comparisons between similarly situated

employees to give rise to an inference of discrimination.  "Context matters in assessing the

factors relevant to the inquiry of whether two employees are similarly situated."  Id. at 195.  In a

workplace disciplinary or personnel action, the relevant factors for consideration are a showing

that the two employees dealt with the same supervisor, were subject to the same standards, and

had engaged in similar conduct "without such differentiating or mitigating circumstances as

would distinguish their conduct or the employer's treatment of them."  Id.

      However, it is true that Plaintiff need not produce evidence that someone outside of her

class were treated more favorably that she was.  Pivirotto v. Innovative Sys., Inc., 191 F.3d 344,

352-56 (3d Cir. 1999)(holding that a plaintiff did not need to establish that she replaced by

someone outside of her class in order to establish a prima facie case); see also Matczak v.

Frankford Candy and Chocolate Co., 136 F.3d 933, 940 (3d Cir. 1997)(holding that in a claim

based on the ADA, a plaintiff is not required to show that employees beyond the ADA's

protection were treated more favorably that he was).

      However, while Plaintiff "need not establish that precise kind of disparate treatment to

establish a claim of discrimination, [she] must establish some causal nexus between [her]

membership in a protected class and [the adverse employment action]."  See Sarullo v. United

States Postal Srv., 352 F.3d 789, 797 (3d Cir. 2003).  In particular, "the plaintiff still must

demonstrate the existence of sufficient facts to allow him to prove by a preponderance of the

evidence that a prima facie case of discrimination exists that goes beyond the plaintiff's mere

speculation."  Bailey v. Principi, No. 02-942, 2003 U.S. Dist. Lexis 15538, at *19 (E.D. Pa.

August 25, 2003) (citing Bullock v. Children's Hospital of Philadelphia, 71 F. Supp. 2d 482, 490

(E.D. Pa. 1999)).  Plaintiff must provide "evidence adequate to create an inference that an

employment decision was based on an illegal discriminatory criterion."  Pivirotto, 191 F.3d at

356 (quoting O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996)).

In the instant case, Plaintiff has not produced either direct or circumstantial evidence

supporting an inference of discrimination.  No direct evidence has been presented by New-

Howard regarding discrimination.  Moreover, at present, New-Howard has not even attempted to

identify a similarly situated comparator.  The record is wholly devoid of information regarding

any comparators at all.  During her deposition, when New-Howard was asked whether other

employees were treated better than she was, she responded that she had no knowledge regarding

that fact.  (New Howard Dep. 161: 3- 161:9, May 27, 2011.)  In addition, New-Howard claimed

during her deposition that others were in fact treated similarly to her.  (New-Howard Dep.

161:12-161:25, May 27, 2011.)  Moreover, when asked whether anyone said anything that would

have indicated that she was being discriminated on the basis of race, New-Howard answered in

the negative.  (See New-Howard Dep. 183:6-183:25, May 27, 2011.)  In addition, New-Howard

did not claim to have knowledge of anyone telling her of their discriminatory intent and had no

knowledge of a person willing to attest to discriminatory treatment that she suffered.  (New-

Howard Dep. 189:11-189:21, May 27, 2011.)  In her response to the motion for summary

judgment, Plaintiff includes no information regarding comparators.

Moreover, the record reveals literally no other evidence supporting a causal nexus on the

issue of race as a factor in the decision to terminate Plaintiff, the refusal to grant FMLA or any of

the other improper actions alleged by Plaintiff in her complaint.

44

b.      Gender[13]

Defendant also argues that Plaintiff has failed to meet her burden with respect to a claim

based upon gender discrimination.  Although Plaintiff raised the issue of gender discrimination at

the administrative level, her complaint does not allege a Title VII claim on the basis of gender.

(See Third Amendment Compl. at ¶ 244.)  We therefore need not address the merits of this

argument.

3.      Retaliatory Employment Actions

Plaintiff alleges that Defendant retaliated against her when it (1) placed her in the Office

Automation Clerk position upon her return to work,(2) failed to give her keys to her desk, an ID

badge, and processed her as a new employee, (3) denied her FMLA requests, and (4) removed

her from employment.  (Third Amended Compl. At ¶ 247(e).)  While we have noted earlier that

Plaintiff defaulted her claims regarding her placement in an Office Automation position, the

failure to provide keys and an ID badge, and the processing of New-Howard as a new employee,

we also address the merits of these claims.

To establish discriminatory retaliation under Title VII, a plaintiff must demonstrate that

(1) she engaged in protected activity under Title VII, (2) the employer took an adverse

employment action against her,[14] and (3) there was a causal connection between her participation

---

[13] Plaintiff does not appear to have argued the issue of gender discrimination before the MSPB.  (See generally Doc. No. 97.)

[14] We note, as well, that there is no evidence in the record to suggest that the employment action taken against Plaintiff in placing her in the position of Office Automation Clerk was in any way adverse.  The position to which she was restored, Office Automation Clerk, is a GS-03 position, as was the position to which she sought restoration, Secretary/Trainee.  In addition, the descriptions of the respective positions provided for in the administrative record suggest that they are substantially similar in terms of responsibility.  This is confirmed by the testimony of Carol

in the protected activity and the adverse employment action.  Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995).

Defendant avers that Plaintiff fails to satisfy the third requirement for stating a claim of retaliation.  A plaintiff may demonstrate a causal link between participation in the protected activity and an adverse employment action by showing a short time lapse between the activity and the employment action.  See Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003); Jalil v. Advel Corp., 873 F.2d 701, 708 (3d Cir. 1989).  However, even if timing alone could ever be sufficient to establish a causal link, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." Thomas, 351 F.3d at 114 (quoting Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003)).  In cases where the temporal proximity is not so close as to be unduly suggestive, "timing plus other evidence may be the appropriate test."  Thomas, 351 F.3d at 114 (quoting Marasco, 318 F.3d at 513).  This other evidence may include ongoing antagonism, the provision of inconsistent reasons for terminating the employee, conduct towards others, refusals to provide a reference for the plaintiff, and other circumstances.  See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

With respect to Plaintiff's first claim of retaliation, that she was placed in the Office Automation position upon her return to work, and this constituted an act of retaliation on the

---

Waldt, who testified that the position of Office Automation Clerk is merely the modern equivalent of the position of Secretary that Plaintiff was terminated from in the 1980s; the VA merely began using new terminology during the 1990s. (See Hr'g, 247:24-248:12.)  In addition, nothing suggests that the other events of August 16, 2012, which included Plaintiff's processing as a new employee, the issuance of an ID badge that did not work, and the failure to provide keys to Plaintiff's desk on the first day constitute adverse employment actions, as well.

basis of her former complaints, Defendant argues that it was not aware of Plaintiff's previous

protected activities, and thus Plaintiff cannot establish a causal connection between her

placement in the position of Office Automation clerk and her protected activity.  However, there

is some evidence to suggest that present VA officials involved in the placement of Plaintiff in the

position of Office Automation Clerk were aware of her previous activities at the time that they

reinstated her to that position.  Plaintiff received a letter of reinstatement to her position as a GS-

03 Secretary from Carol Waldt[15] on July 29, 2005.  (See Def.'s Ex. A at MSPB00344.)  Plaintiff

admitted during her deposition that she did not know Terris Farmer before she began working at

the VA in August 2005.  (See New-Howard Dep. 56:10-56:12, May 27, 2011.)  In addition,

Plaintiff admitted that Farmer did not mention any knowledge of her previous protected activity

during their initial encounter.  (New-Howard Dep. 56:21-56:23, May 27, 2011.)  However,

Plaintiff testified that Mr. Graham, Farmer's direct supervisor, had been her supervisor at the

time that she was originally discharged in 1987.  (New-Howard Dep. 96:11-96:17, March 27,

2011.)   As a result, although Plaintiff did not know Farmer, there does exist an issue of fact as to

whether other individuals who knew New-Howard at the time of her initial discharge were aware

of her prior protected activities.

　　　　However, the purported retaliatory action took place long after the protected activity.

Even assuming that New-Howard's protected activity extended to the point of the disposition of

her successful appeal, that decision was rendered on July 11, 2005.  Pursuant to that decision, on

July 29, 2005, Plaintiff received a letter from the VA which asserted that New-Howard would be

---

[15] Carol Waldt is sometimes referred to as Carol Winter in the documentation supporting
the motion for summary judgment.

reinstated to the position of a GS-03 Secretary.  (See Def.'s Ex. A at MSPB000344.)  It was only

upon Plaintiff's return to work on August 15, 2005, that she was instead placed in the position of

an Automation Clerk.  Taken in context, the amount of time that passed between her protected

activity and the alleged retaliatory action was too attenuated in time to suggest that proximity in

time alone can evidence a causal connection.  See, e.g., Thomas, 351 F.3d at 114 (finding that

three-weeks between the protected activity and the retaliatory action did not constitute an

unusually suggestive time period).  In addition, Plaintiff has adduced no other related evidence

suggesting that Plaintiff was placed in the Office Automation position due to her activity, given

that it was merely the modern equivalent of the secretarial position that Plaintiff sought

reinstatement to.[16]  Similarly, there is no causal connection between Plaintiff's pursuit of an

MSPB appeal and the actions of Defendant in failing to issue Plaintiff keys and an ID badge on

the first day of work and in processing her as a new employee, given that the temporal proximity

alone does not establish a causal connection, and Plaintiff has adduced no other evidence

suggesting that these events occurred due to her reporting activity.

Turning to Plaintiff's claim regarding the denial of her requests for leave, Plaintiff alleges

that these denials issued in retaliation for protected activities as well.  It is unclear from the

Complaint and Plaintiff's submissions whether Plaintiff pursues this claim based on her filing of

---

[16] Plaintiff alleges in her complaint that Waldt testified before the MSPB that Plaintiff's former Secretary position existed on July 25, 2005, August 15, 2005, and thereafter.  (See Third Amended Compl. at ¶ 205.)  In fact, Waldt testified during the hearing that the difference in titles was merely a difference that was a consequence of the fact that in the late 1990s, individuals that held Plaintiff's former position ceased to be called secretaries, and began to be referred to as office automation clerks. (See Hr'g, 247:24-248:12, July 15, 2009.)

In addition, as we noted above that Plaintiff failed to timely raise her claim that her restoration to the position of automation clerk was not timely raised, and thus Plaintiff cannot now raise the issue before this tribunal.

a petition for enforcement of the Board's judgment in November 2005, or whether she based her claim on her previous reporting activity, which came to fruition in July 2005. The denial of Plaintiff's leave in February 2006 occurred nearly seven months after her reporting activity, and over three months after the filing of her petition for enforcement. Thus, the temporal connection alone is not unusually suggestive. Moreover, the circumstances surrounding the denial of leave do not suggest a causal link. Plaintiff was provided with numerous letters from Defendant, outlining the procedures that she should follow in order to obtain FMLA leave. In addition, as described in greater detail above, where Plaintiff provided the appropriate documentation to support her request, Plaintiff was granted FMLA leave by her employer. Thus, Plaintiff fails to provide any evidence of a causal connection between her protected activity and the alleged retaliatory action other than the fact that the denial of her leave requests occurred after the protected activity. Nor does Plaintiff point to any significant inconsistencies in the actions of Defendant in denying her leave requests.

Finally, Plaintiff alleges that her termination also constituted a retaliatory action taken for her participation in protected activities. In the instant case, Plaintiff's removal took place in July 2006, almost one year after the favorable disposition of her appeal before the MSPB. In addition, Plaintiff has adduced no evidence to suggest that her removal had any causal connection with her protected activities. Plaintiff was terminated for her failure to comply with leave procedures. Plaintiff did not illustrate any way in which similarly situated individuals were treated differently, any significant inconsistencies in the stated rationale for her termination, or any other circumstances evidencing a connection to her reporting activities. As a result, no genuine issue of material fact exists as to the element of a causal nexus with respect to Plaintiff's termination.

49

4.     Rebutting Legitimate, Non-Discriminatory Reasons Offered by VA

With respect to Plaintiff's claims under Title VII for her placement in the position of office automation clerk, denial of her leave and her ultimate termination, Plaintiff has offered no evidence to rebut the legitimate, non-discriminatory rationales offered by the VA to support these actions.

As noted above, once a prima facie case of discrimination or retaliation is established by the plaintiff, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  See McDonnell Douglas, 411 U.S. at 802.  The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment action.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  Defendant first notes that Plaintiff was placed in the Office Automation position because it was the modern equivalent of the secretarial position that Plaintiff sought.  Regarding the denial of leave to the Plaintiff, Defendant avers that Plaintiff failed to produce adequate documentation to support the granting of such leave.  In addition, in the instant case, given Plaintiff's record of attendance and her failure to report back to work despite repeated warnings by her employer, Defendant has articulated a legitimate, nondiscriminatory reason for her termination.

Once the employer meets this burden, "the burden of production returns to the plaintiff, who can defeat summary judgment only by showing by a preponderance of the evidence that the employer's stated reason is pretextual."  White v. Planned Sec. Servs., No. 11-4622, 2012 WL 1548962, at *2 (3d Cir. May 3, 2012).  "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer

that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes, 32 F.3d at 764 (internal citations omitted).

In order to discredit an employer's proffered reason, a plaintiff cannot simply show that the employer's decision was wrong or mistaken. Id. Instead, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Fuentes, 32 F.3d at 765 (quoting Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)). Thus, a plaintiff must show that the employer's reasons was "so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997).

In the instant case, Plaintiff has adduced no evidence suggesting that the reasons for her placement in the position of Office Automation Clerk were specious. As noted above, the VA has produced evidence that the position of Office Automation Clerk is in fact merely the modern equivalent of the position from which Plaintiff was terminated in the 1980s. (See Hr'g, 247:24-248:12.) Plaintiff has not produced any evidence to rebut Defendant's legitimate reasons for her placement in the position described.

In addition, Plaintiff has adduced no evidence suggesting that Defendant's rationale in terminating Plaintiff was a post-hoc fabrication or did not otherwise motivate the employment action. Plaintiff points only to one inconsistency, which relates both to the issue of her removal and the related denial of her request for leave. She avers that evidence exists suggesting that her

51

doctor, Dr. Rogers, mailed the required WH-380 forms to Defendant on November 12, 2005 and again on November 25, 2005.  Plaintiff asserts that Defendant's claim that it never received documentation of the request for leave based on her illness until December 16, 2005 is thus specious.  In addition, Plaintiff asserts in her filing that the day after her proposed removal, Dr. Rogers faxed and mailed another WH-380 certification to the VA.  The evidence produced in the record to support this charge is a copy of a fax that was sent to Joe Malizia, the union representative for the VA, on December 16, 2012.  This fax included a copy of another fax, which was purportedly sent on November 12, 2005 to Farmer.  (See Def.'s Ex. C at DNH00111.)

To the extent that such a report may have been sent, however, no evidence suggests that Plaintiff ever received a communication from the VA that her request for leave had been granted, and therefore, never obtained permission to be absent from work.  In addition, in the larger scheme of the absences involved in the present case, and the volume of communications between the VA and Plaintiff, the one inconsistency mentioned does not rise to the level such that a reasonable factfinder could find the VA's stated reason for termination or stated reasons for the denial of leave "unworthy of credence."

Moreover, to the extent that the paperwork was not received, a plaintiff cannot merely demonstrate a mistaken decision, but must rather show that the decision was so plainly wrong that it could not have been the employer's real reason.  Keller, 130 F.3d at 1109.  In the instant case, where one set of paperwork may have been replaced, a fact that does not appear to have been clearly established, given Defendant's course of conduct afterwards, during which it properly received Plaintiff's request, processed her paperwork, and granted her leave, Plaintiff has failed to demonstrate a decision that was "plainly wrong."  This is especially true given

52

Plaintiff's failure to later submit supporting paperwork regarding her request for continuing leave, Plaintiff's failure to support her requests for leave based on her husband's illness, and her failure to return to work after her leave requests were denied.

In addition, a review of the record reveals that every letter sent from Defendant to Plaintiff communicated a denial of her requests for leave based upon insufficient documentation, and included enclosures of the appropriate forms to complete and instructions on how to do so. In addition, the paperwork supporting her documentation at no point states inconsistent reasons supporting her termination.  Thus, other than the limited evidence regarding the failure to receive one set of forms, Plaintiff has adduced no evidence suggesting any inconsistencies on the part of the VA.  Therefore, there is no genuine issue of material fact as to Plaintiff's Title VII claims based upon either discrimination or retaliation for protected activities.

V.     Bivens claim

Plaintiff finally alleges that her constitutional rights were violated when she was deprived of employment, and she seeks to pursue a Bivens action in order to pursue her claim.  Plaintiff appears to allege that her termination on the basis of her protected activity and on the basis of discriminatory rationales violated her rights.  In addition, Plaintiff alleges that she was "denied due process of law by the Secretary of the Department of Veteran's Affairs and the MSPB as a result of altered documents being used in the administrative and quasi-administrative and quasi-judicial proceedings which gave rise to this complaint." (Third Amended Compl. at 251).  The Court addresses each claim in turn.

With respect to Plaintiff's claims regarding her protected activity and her discharge based on discrimination, Plaintiff cannot maintain a cause of action under Bivens pursuant to these

claims.  As a federal employee, Plaintiff's exclusive remedy for employment discrimination claims lies in Title VII.  See Brown v. General Servs. Admin., 425 U.S. 820, 828-29 (1976).   As a result, claims based upon discrimination and upon retaliation for the exercise of protected activity are preempted by Title VII.  See Owens v. United States, 822 F.2d 408 (3d Cir. 1987)("Title VII provides federal employees a remedy that 'precludes actions against under other federal legislation.'"); see also Francis v. Mineta, 505 F.3d 266, 271 (3d Cir. 2007); Ethnic Employees of Library of Congress v. Boorstin, 751 F.2d 1405, 1415 (D.C. Cir. 1985).

Plaintiff also seeks to pursue a Bivens claim on the basis of the alleged use of "altered documents" in the "administrative and quasi-judicial proceedings which gave rise to this complaint."  (Third Amended Compl. at ¶ 251.)  Plaintiff appears to assert that the use of such documents constituted a violation of her due process rights.  The Eleventh Circuit addressed a similar claim in Pinson v. Rumsfeld, 192 Fed. App'x 811 (11th Cir. 2006).  In that case, the plaintiff, a member of the military, alleged that the defendants violated Section 1985 and the Fifth Amendment by conspiring to alter a document in order to show that he had disobeyed a superior, causing the suspension of his security clearance.  In addressing the issue, the court noted that "the comprehensive statutory scheme established by Congress relating to federal employment (CSRA) precludes the maintenance of job-related Bivens actions by federal employees."  Pinson, 192 Fed. App'x at 819.  The Third Circuit has indeed ruled that a federal employee may not bring an action for damages based upon a constitutional violation involved in an employment decision.  See Wright v. Hadrick, 90 Fed. App'x 641, 642 (3d Cir. 2004).  In the instant case, Plaintiff challenges the procedures followed by the agency in her removal, and those

procedures are properly redressed in the context of review under the CSRA.[17]

However, the Court notes that the Third Circuit differs from other circuits in that a federal employee may pursue a claim for declaratory relief and injunctive relief for alleged violations of his constitutional rights under Third Circuit law, although claims for damages are preempted by the CSRA.  Id.  As to these claims, Plaintiff's claims appear to be premised upon a violation of substantive due process.  In support of her claim, Plaintiff cites Fifth Circuit case law addressing the question of whether a state employee has substantive due process rights in his employment. (See Third Amended Compl. at ¶ 250)(citing Bolton v. City of Dallas, 472 F.3d 261, 263 (5th Cir. 2006)(citing Moulton v. City of Beaumont, 991 F.2d 227, 230 (5th Cir. 1993)).

To the extent that such law may be applicable in the context of a federal employee, Third Circuit law on the matter differs from the law of the Fifth Circuit.  Under Third Circuit law, "legislative government deprivation that comports with procedural due process may still give rise to a substantive due process claim upon allegations that the government deliberately and arbitrarily abused its power."  Nicholas v. Pennsylvania State University, 227 F.3d 133, 139 (3d Cir. 2000)(internal quotations marks omitted).  As a result, "a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are 'arbitrary, irrational, or tainted by improper motive.'"  Id.  However, not all property that is subject to procedural due process protections is subject to substantive due process protections.

---

[17] In addition, Plaintiff's claim also appears to be an action based upon violations of the Privacy Act, cast as a Bivens claim.  At least one other court in this circuit has found that the Privacy Act provides a comprehensive remedial scheme that bars a separate Bivens action.  See Newmark v. Principi, 262 F. Supp. 2d 509, 518 (E.D. Pa. 2003).  Thus, to the extent that Plaintiff pursues an action for damages for a violation of the alteration of documents pursuant to Bivens, that claim cannot be maintained.

Id.  In particular, public employment has been found by the Third Circuit not to constitute a fundamental property interest entitled to substantive due process protection.  Id. at 142. Consequently, Plaintiff cannot pursue a Bivens claim for a violation of substantive due process in the deprivation of her federal employment.

To the extent that Plaintiff has misstated her claim, and instead seeks to pursue a Bivens claim based upon a violation of procedural due process, Plaintiff's claim also has no merit.  To state a claim based upon a violation of procedural due process, a public employee must show (1) that the dismissal deprived him of a property or liberty interest, and (2) that the employer did not afford him adequate procedural protections in connection with the action.  See Makky v. Chertoff, 489 F. Supp. 2d 421, 434 (D. N. J. 2007)(citing Richardson v. Felix, 856 F.2d 505, 507 (3d Cir. 1988)).  Procedural due process requires notice of the charges against him and an opportunity for a hearing sufficient to respond to those charges.  Richardson, 856 F.2d at 507. Plaintiff was afforded both notice and an opportunity to be heard on the issue of her removal. (See Def.'s Ex. A at MSPB000372.)  Consequently, Plaintiff states no valid procedural due process claim.

Finally, in the interest of completeness, the Court addresses the substance of Plaintiff's allegations. While Plaintiff alleges that altered documents were used during administrative proceedings, neither her complaint nor any subsequent filings with the Court have articulated more clearly which documents have been altered.  In addition, Plaintiff's response to the motion for summary judgment fails to address Defendant's argument regarding her Bivens claim in its entirety.

As noted above, the Court has reviewed the record to discern any evidence regarding

Plaintiff's claim.  In the course of proceedings before the MSPB, Plaintiff contended that certain records had been altered.  These claims were limited to (1) Plaintiff's husband's discharge papers from Albert Einstein Medical Center, (2) a letter written from New-Howard's lawyer on August 31, 2005, (3) Plaintiff's submission of a certificate to return to work or school, which was included with the letter written by New-Howard's lawyer on August 31, 2005, (4) Plaintiff's submission of a "Certification of a Health Care Provider," and (5) two letters submitted to the agency subsequent to her proposed removal.  As described in detail in Section III.B, Plaintiff's eventual removal had nothing to do with the substance of the purported alterations.  See infra. pp. 12-17.

VI.    Attorney's Fees

Plaintiff has not prevailed on the substance of any of her claims, with the possible exception of her request for review of the MSPB's disposition of her nondiscrimination claims.  However, given that Plaintiff is pro se, we need not address the merits of her request for attorney's fees with respect to this claim.  See Bleschke v. United States, No. 93-3505, 1994 WL 108051, at *1-*2 (Fed. Cir. Mar. 29, 1994).

VII.   Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 56) is GRANTED IN PART and DENIED IN PART.  Plaintiff's Cross-Motion for Summary Judgment (Doc. No. 97) is DENIED.  The petition for review is REMANDED to the Merit Systems Protection Board, to make findings regarding the issue of the denial of Plaintiff's requests for sick leave.

The Clerk of Court is directed to close this matter for statistical purposes.  An appropriate Order will follow.